FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. ARTHUR L. HOLLIS, *Defendant-Appellant.* | No. 05-30611<br>D.C. No. CR-04-00140-HRH<br>AMENDED OPINION |

Appeal from the United States District Court
for the District of Alaska
H. Russel Holland, Chief District Judge, Presiding

Argued and Submitted
December 5, 2006—Seattle, Washington

Filed June 20, 2007

Before: M. Margaret McKeown and Betty B. Fletcher, Circuit Judges, and William W Schwarzer,* District Judge.

Opinion by Judge Schwarzer

## SUMMARY

**Criminal Law and Procedure/Sentencing**

The court of appeals affirmed a judgment of the district court. The court held that in the context of *Apprendi*, 21 U.S.C. § 841(b)(1)(A)(iii) requires an indictment to charge

*The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

and the jury to find "crack" to trigger the enhanced penalties associated with cocaine base.

Appellant Arthur Hollis was charged in district court in Alaska with distribution of cocaine base and maintaining drug-involved premises in violation of §§ 841(a)(1) and (b)(1)(A) and §§ 856(a)(1) and (b), respectively. Evidence of sales by Hollis to a government informant, prior to the charged sale was admitted at Hollis's trial, as was evidence seized from his apartment, and evidence that he used two apartments to manufacture crack cocaine. A jury found Hollis guilty. At sentencing, Hollis argued that the enhanced penalties under § 841(b)(1)(A) could not be imposed on him because there were no jury findings that he had distributed 50 grams or more of crack cocaine or that his prior offense was a drug-related felony. The district court rejected Hollis's argument and sentenced him to 240 months in prison under § 841(b)(1)(A).

Hollis appealed his conviction and sentence, contending that it was error to admit the informant's testimony because the informant was a convicted felon and the testimony was prejudicial; the district court erred in failing to suppress the evidence obtained in the search of an apartment on North Hoyt Street; there was insufficient evidence of drug manufacturing at the North Hoyt apartment and of his control of an apartment on South Bragaw Street where evidence of drug dealing was found; that because "crack" was not charged in the indictment or found by the jury, *Apprendi* should have precluded the imposition of the increased sentence; and that the district court's finding that Hollis had a prior felony drug conviction violated *Apprendi.*

**[1]** Hollis's argument about the informant's testimony went to the weight of the evidence, not its admissibility. On that score, the district court specifically instructed the jury to examine the informant's testimony with greater caution than that of other witnesses. **[2]** The district judge carefully

weighed the prejudicial effect against the probative value of the testimony and gave the jury a limiting instruction. There was no abuse of discretion.

**[3]** The warrant application rested primarily on the police officers' own observation of the controlled drug transaction between Hollis and the informant and the surveillance of Hollis's subsequent movements, which led to the North Hoyt apartment. The evidence obtained from the search of the North Hoyt apartment was properly admitted because the affidavit demonstrated a fair probability that contraband would be found there.

**[4]** There was abundant evidence of drug manufacturing at the North Hoyt apartment, including a large number of items used in the manufacture of crack from powder cocaine. A reasonable jury could have found beyond a reasonable doubt that Hollis manufactured controlled substances at the North Hoyt apartment. **[5]** With respect to the South Bragaw apartment, there was evidence of Hollis's fingerprints on items containing cocaine residue, and that police had seen Hollis at the apartment.

**[6]** Under *Apprendi*, drug type and quantity are facts that have the potential to increase the maximum sentence to which the defendant is exposed, and these facts must be alleged in the indictment, submitted to the jury, and proven beyond a reasonable doubt. Under § 841(b)(1)(A)(iii), if a defendant distributes 50 grams of cocaine, he faces a maximum of 20 years and no minimum under 21 U.S.C. § 841(b)(1)(C). Thus, subsection (iii) increases the maximum—and imposes a minimum—sentence for distributing cocaine base over the sentence for the same quantity of cocaine. **[7]** Whether, in the context of *Apprendi*, a conviction under § 841(b)(1)(A)(iii) requires the government to charge, and the jury to find, more than that defendant distributed cocaine base, was an issue of first impression in the Ninth Circuit. **[8]** Cocaine and cocaine base are chemically identical. If any form of cocaine base

qualifies for the enhanced penalties under the statute, then § 841(b)(1)(A)(iii) swallows § 841(b)(1)(A)(ii). Yet, Congress clearly intended to make a distinction between powder cocaine and the more potent and addictive form of cocaine base known as "crack" or "rock" cocaine. The court of appeals read the statute, therefore, as requiring the indictment to charge and the jury to find "crack" to trigger the enhanced penalties associated with cocaine base.

**[9]** Although an *Apprendi* error occurred in Hollis's case, there was overwhelming and uncontradicted evidence at trial that the substance Hollis distributed was crack. It had to be concluded that the constitutional *Apprendi* error was harmless beyond a reasonable doubt.

**[10]** To determine whether a prior conviction qualifies as a drug trafficking offense, courts look only to the fact of conviction and the statutory definition of the prior offense. Here, the presentence report, to which no exception was taken, reported that in 1994 Hollis was found guilty of felony misconduct involving a controlled substance. There could be no question that the previous conviction was for a felony drug offense and that it was final. The district court committed no error in finding that Hollis's prior conviction qualified as a felony drug offense. The judgment of the district court had to be affirmed.

## COUNSEL

Matthew M. Robinson, Robinson & Brandt, P.S.C., Cincinnati, Ohio, for the defendant-appellant.

Jo Ann Farrington, Assistant United States Attorney, Deborah M. Smith, Acting United States Attorney, Anchorage, Alaska, for the plaintiff-appellee.

## OPINION

SCHWARZER, District Judge:

Arthur Hollis (Hollis) was sentenced to 240 months' imprisonment after a jury convicted him of distribution of cocaine base and maintaining drug-involved premises in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A) and 21 U.S.C. §§ 856(a)(1) & (b), respectively. He challenges his conviction and his sentence, contending that evidence of sales by Hollis to a government informant prior to the charged sale should not have been admitted, that evidence seized from his apartment should have been suppressed, that the evidence that he used two apartments to manufacture crack was insufficient to sustain his conviction on those counts, that he was improperly sentenced under 21 U.S.C. § 841(b)(1)(A) for distribution of cocaine base, and that his sentence was improperly based on the fact of his prior conviction. We find his contentions to be without merit and affirm.

## FACTUAL AND PROCEDURAL HISTORY

Anchorage police arranged with a local drug dealer to assist in the investigation and prosecution of other drug dealers. The cooperating witness had purchased substantial quantities of crack from Hollis on prior occasions. Police arranged a rendezvous for the witness to purchase nine ounces of crack from Hollis while under surveillance. While waiting for Hollis, the witness was approached by two individuals asking for drugs; the witness brushed them off and left for another meeting place. After sale of the crack by Hollis to the witness had been consummated, police followed Hollis to a two-apartment dwelling on North Hoyt Street.

Hollis was not arrested until several months later when police again followed him. Upon his arrest, police searched his truck and found wrapping paper contaminated with cocaine and a digital scale with cocaine residue. When ques-

tioned, Hollis and his girlfriend gave their address as apartment No. 1 on North Hoyt Street, which turned out to be false.

Police obtained a search warrant for apartment No. 1, but found it occupied by someone else. After inquiries, police obtained warrants to search apartment No. 2, as well as an apartment on South Bragaw Street to which Hollis had been followed the day before. On executing the warrant at apartment No. 2, police observed evidence that the occupants recently attempted to clean the apartment. They found powder cocaine and crack, residue of both, and baking soda and implements used in the manufacture of crack. Other evidence was found linking Hollis to the apartment. In the search of the South Bragaw apartment, packaged crack cocaine was found along with materials and implements used in the manufacture of crack. Hollis's fingerprints were recovered from one of the plastic bags and from a glass jar, which both contained cocaine residue.

Hollis was indicted on one count of distributing fifty grams or more of cocaine base and two counts of using or maintaining a place for the purpose of manufacturing crack. The Government gave notice pursuant to 21 U.S.C. § 851 that it would seek enhanced penalties based on Hollis's prior felony drug offense. Hollis's motion to suppress the fruits of the searches of the apartments was denied, as was his motion to exclude on due process grounds the testimony of the cooperating witness on the basis that he had continued to engage in drug dealing. The jury returned a verdict of guilty on all three counts.

At the sentencing hearing, Hollis argued that the enhanced penalties under § 841(b)(1)(A) could not be imposed on him because there were no jury findings that he had distributed fifty grams or more of crack or that his prior offense was a drug-related felony. The court rejected Hollis's argument and sentenced him under 21 U.S.C. § 841(b)(1)(A) to the manda-

tory minimum term of 240 months. This timely appeal followed.

## DISCUSSION

### I.

Hollis contends that it was error to admit the cooperating witness's testimony about the uncharged drug transactions as prior bad act evidence under Federal Rule of Evidence 404(b). We review evidentiary rulings for abuse of discretion. *United States v. Alvarez*, 358 F.3d 1194, 1205 (9th Cir. 2004). "In making this determination, reviewing courts consider whether the decision was based on relevant factors and whether there was 'a clear error of judgment.' " *Id.* (quoting *United States v. Soulard*, 730 F.2d 1292, 1296 (9th Cir. 1984)). The ruling will be reversed if it "lies beyond the pale of reasonable justification under the circumstances." *Harman v. Apfel*, 211 F.3d 1172, 1175 (9th Cir. 2000).

**[1]** Other act evidence is admissible under Rule 404(b) if it "(1) tends to prove a material point in issue; (2) is not too remote in time; (3) is proven with evidence sufficient to show that the act was committed; and (4) if admitted to prove intent, is similar to the offense charged." *United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002). Hollis does not challenge the evidence's materiality, closeness in time or similarity to the charged offense. Instead, he argues that the evidence was insufficient because it consisted only of the testimony of the cooperating witness, who was a convicted felon. Hollis maintains that because the witness was involved in criminal activity while working for the police, the witness's testimony is inherently unreliable. Hollis's argument goes to the weight of the evidence, not its admissibility. On that score, the district judge specifically instructed the jury "to examine [the cooperating witness's] testimony with greater caution than that of other witnesses."

**[2]** Hollis argues further that the testimony should have been excluded as prejudicial under Rule 403. We disagree. The district judge carefully weighed the prejudicial effect against the probative value of the testimony. He found the evidence to have little prejudice but to be helpful in providing the jury with the necessary background to put the charged transactions between Hollis and the cooperating witness into context. In addition, the court gave the jury a limiting instruction to consider the testimony only on the question of Hollis's intent or knowledge, not for any other purpose. *See United States v. Hinton*, 31 F.3d 817, 823 (9th Cir. 1994). There was no abuse of discretion.

## II.

Hollis next contends that the district court erred in failing to suppress the evidence obtained in the search of the North Hoyt apartment.[1] We review the denial of a motion to suppress evidence de novo, with the district judge's factual findings reviewed for clear error. *United States v. Gorman*, 314 F.3d 1105, 1110 (9th Cir. 2002).

**[3]** Hollis argues that the warrant application rested primarily on information from the cooperating witness, as a confidential source, and lacked sufficient probable cause because it failed to disclose information relevant to the witness's veracity. In fact, the affidavit rested primarily on the police officers' own observation of the controlled drug transaction between Hollis and the witness and the surveillance of Hollis's subsequent movements, which led to the North Hoyt apartment. The references to the cooperating witness were limited to his role in setting up the drug transaction and played no part in the determination that probable cause existed that evidence of drug dealing would be found in the apartment. The district judge properly admitted the evidence

[1]Hollis concedes that he does not have standing to challenge the search of the South Bragaw apartment.

obtained from the search of the North Hoyt apartment because the affidavit demonstrated a fair probability that contraband would be found there. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).

## III.

Hollis contends that it was error to deny his motion under Federal Rule of Criminal Procedure 29 for acquittal of the charges under the maintaining premises counts of the indictment—Counts Two and Three—because there was insufficient evidence of drug manufacturing at the North Hoyt apartment and of his control of the South Bragaw apartment. Denial of a motion for acquittal under Rule 29 is reviewed de novo, with the appellate court examining the ruling in the light most favorable to the Government and asking whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Johnson*, 357 F.3d 980, 983 (9th Cir. 2004) (quotation omitted).

Under 21 U.S.C. § 856(a)(1) it is unlawful to "knowingly . . . use . . . any place . . . for the purpose of manufacturing . . . any controlled substance." Hollis concedes that he resided at the North Hoyt apartment but argues that there was no evidence that it was used to manufacture controlled substances or that he had knowledge of such a use.

**[4]** To the contrary, there was abundant evidence of drug manufacturing at the North Hoyt apartment. The search of the apartment revealed a large number of items used in the manufacture of crack from powder cocaine, all contaminated with cocaine residue or remnants of crack cocaine. Police seized oven mitts, metal pots, a strainer, and mop water, all of which had trace amounts of cocaine residue on them. Baggies with cocaine residue, bits of crack cocaine, and baking soda were also seized. Viewing this evidence in the light most favorable to the Government, a reasonable jury could have found

beyond a reasonable doubt that Hollis manufactured controlled substances at the North Hoyt apartment.

**[5]** With respect to the South Bragaw apartment, Hollis does not contend that it was not used to manufacture controlled substances. Instead, he argues only that he did not "manage or control" the apartment. However, to "manage or control" premises is a requirement of § 856(a)(2), but not § 856(a)(1), the statute of conviction. Rather, as amended in 2003, § 856(a)(1) criminalizes the "use" of "any place, whether permanently or temporarily" to manufacture drugs. PROTECT Act of 2003, Pub. L. No. 108-21, § 608 (amending 21 U.S.C. § 856(a)(1) "by striking 'open or maintain any place' and inserting 'open, lease, rent, use, or maintain any place, whether permanently or temporarily' "). The jury instruction reflected the 2003 amendment. Evidence showed that Hollis's fingerprints were found on a glass jar and a plastic baggie both containing cocaine residue, and that, one day prior to the search, police had observed him staying at the apartment for a few hours. Viewing the evidence in the light most favorable to the Government, a reasonable jury could have found that Hollis "used" the South Bragaw apartment to manufacture drugs.

## IV.

The district judge found that § 841(b)(1)(A)'s twenty-year mandatory minimum applied to Hollis because the jury found him guilty of distributing fifty grams of cocaine base and the court found that he had a prior felony drug conviction. Hollis argues that both findings violated *Apprendi*'s holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Preserved *Apprendi* challenges are reviewed de novo. *United States v. Smith*, 282 F.3d 758, 771 (9th Cir. 2002).

A. *Cocaine Base*

**[6]** Under *Apprendi*, drug type and quantity "are facts that have the potential to increase the maximum sentence" to which the defendant is exposed, and these facts must be alleged in the indictment, submitted to the jury, and proven beyond a reasonable doubt. *United States v. Toliver*, 351 F.3d 423, 430 (9th Cir. 2003) (holding that under §§ 841(a) and 841(b)(1) drug quantity and type are functional equivalents of elements of the offense when a finding would expose the defendant to an increased maximum sentence). Under § 841(b), a defendant is subject to a sentence of twenty years to life if he distributes five kilograms of "cocaine, its salts, optical and geometric isomers, and salts of isomers," 21 U.S.C. § 841(b)(1)(a)(ii), or fifty grams of "a mixture or substance . . . which contains cocaine base," 21 U.S.C. § 841(b)(1)(A)(iii).[2] If he distributes fifty grams of cocaine, he faces a maximum of twenty years and no minimum under 21 U.S.C. § 841(b)(1)(C).[3] Thus, subsection (iii) increases the maximum —and imposes a minimum—sentence for distributing cocaine base over the sentence for the same quantity of cocaine.

Here, the district judge seemingly satisfied *Apprendi* because the indictment alleged that Hollis distributed "50 grams or more of cocaine base," the special verdict form asked the jury whether Hollis was guilty of "distribution of fifty (50) grams or more of cocaine base," and the jury found him so. Hollis argues, however, that proof of drug type required a determination of whether the drugs involved in the offense were "crack" cocaine, rather than some other form of "cocaine base," because Congress intended to impose the

[2]If Hollis did not have a prior felony drug conviction the sentencing range would be ten years to life.

[3]Although Hollis's sentence was within this range, *Apprendi* is implicated because the finding of cocaine base exposed him to a higher maximum, i.e. life. *See United States v. Velasco-Heredia*, 319 F.3d 1080, 1084-85 (9th Cir. 2003).

enhanced penalties only where crack is involved. That determination, he contends, is a fact that increases the penalty for the offense beyond the prescribed statutory maximum for cocaine. He argues that because "crack" was not charged in the indictment or found by the jury, *Apprendi* should have precluded the imposition of the increased sentence.

**[7]** Hollis's argument requires us to address the interpretation of cocaine base in § 841(b)(1)(a)(iii). This issue has been before different courts of appeals a number of times but always in a different context. Until now the courts have dealt with the issue in the sentencing context, i.e. whether the substance a defendant had been found to have distributed qualified as cocaine base for the purpose of imposing the enhanced penalty. *See, e.g.*; *United States v. Edwards*, 397 F.3d 570 (7th Cir. 2005); *United States v. Brisbane*, 367 F.3d 910 (D.C. Cir. 2004); *United States v. Barbosa*, 271 F.3d 438 (3d Cir. 2001). In this case of first impression, we must consider the issue in the context of *Apprendi*, i.e. whether a conviction under (iii) requires the government to charge, and the jury to find, more than that defendant distributed cocaine base.

We considered the definition of cocaine base in the sentencing context in *United States v. Shaw*, 936 F.2d 412 (9th Cir. 1991). There the defendant argued that he could not be sentenced for distributing cocaine base in the absence of proof that the substance contained "a hydroxylion (OH—) such that it is a 'base,' as the term is used in chemistry." *Id.* at 414. After review of the legislative history, the commentaries to the Sentencing Guidelines, and various dictionary definitions, we rejected that argument. *Id.* at 414-15. We concluded "that Congress and the [Sentencing] Commission must have intended the term 'cocaine base' to include 'crack' or 'rock cocaine,' which we understand to mean cocaine that can be smoked unlike cocaine hydrochloride." *Id.* at 416. While *Shaw* tells us that cocaine base includes crack, it does not

establish what facts § 841(a) requires a jury to find to sustain a conviction for distributing cocaine base.[4]

There can be no doubt that when Congress adopted the Anti-Drug Abuse Act of 1986, it meant to deal with what it saw as a crack epidemic sweeping the country. *See Shaw*, 936 F.2d at 415-16; *see also Brisbane*, 367 F.3d at 912; *United States v. Lopez-Gil*, 965 F.2d 1124, 1134 (1st Cir. 1992). But when it directed the most severe penalties at distribution of cocaine base, its terminology swept beyond crack. While all crack is cocaine base, not all cocaine base is crack. *Edwards*, 397 F.3d at 571. Indeed, cocaine in its natural form is cocaine base. *Brisbane*, 367 F.3d at 911. When the leaves of the coca plant are shredded and mashed with a strong alkali, a solvent, and sulfuric acid, a paste is produced containing cocaine base that is smokeable. *Id.* Only when the paste is processed with hydrochloric acid to create a salt, cocaine hydrochloride, does it become what is commonly known as cocaine, i.e. a white powder. *Id.* Beginning in the 1970s, American drug dealers developed methods for freeing the cocaine base from cocaine hydrochloride. *Id.* Initially they freebased cocaine using a process prone to explosions. *Id.* In the 1980's, they began to

[4]*Shaw* relied in part on the commentary to the Sentencing Guidelines' definition of cocaine base which, at the time, equated cocaine base with crack. *Shaw*, 936 F.2d at 415. The Guidelines have since been amended to define "cocaine base" as follows: "Cocaine base, for the purpose of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rock-like form." U.S. Sentencing Guidelines Manual § 2D1.1(c), note D. The *Shaw* court "construe[d] the statute and the guidelines to be consistent with each other in their use of the term 'cocaine base.' " *Shaw*, 936 F.2d at 415. That holding and the subsequent amendment to the Guidelines are consistent with our conclusion that the term "cocaine base" as used in § 841(b)'s enhanced penalty provisions is limited to "crack" cocaine. *See also United States v. Munoz-Realpe*, 21 F.3d 375, 377 (11th Cir. 1994) (relying on the amended Guidelines 2D1.1(c) definition of "cocaine base" to conclude that "cocaine base" as used in the mandatory minimum sentencing provision of 21 U.S.C. § 952(a) is limited to "crack" cocaine).

manufacture what came to be known as crack by cooking cocaine hydrochloride with baking soda. *Id.*

**[8]** Thus, cocaine and cocaine base are chemically identical. If any form of cocaine base qualifies for the enhanced penalties under the statute, then subsection (iii) swallows subsection (ii). *Edwards,* 397 F.3d at 574. Yet, as we noted in *Shaw*, Congress clearly intended to make a distinction between powder cocaine and the more potent and addictive form of smokeable "cocaine base" known as "crack" or "rock" cocaine. *Shaw*, 936 F.2d at 415-16. We read the statute, therefore, as requiring the indictment to charge and the jury to find "crack" to trigger the enhanced penalties associated with cocaine base. Our holding is consistent with the one other circuit that has decided this issue post-*Apprendi*. *See Edwards*, 397 F.3d at 575 (reaffirming circuit precedent that for purposes of the statutory minimum penalties in 21 U.S.C. § 841(b), the enhanced penalties for "cocaine base" apply only where the substance is "crack cocaine" and "lesser penalties apply to all other forms of cocaine"); *cf. Brisbane*, 367 F.3d at 914-15 (declining to choose among two definitions of "cocaine base"—as limited to "crack" cocaine or including other as yet undiscovered "smokeable" forms of cocaine base —because the government failed to prove that the substance at issue satisfied either definition).

**[9]** While an *Apprendi* error occurred in this case, it was harmless beyond a reasonable doubt. There was overwhelming and uncontradicted evidence at trial that the substance Hollis distributed was crack. *See, e.g., Smith*, 282 F.3d at 771-72 (holding that constitutional *Apprendi* error was harmless beyond a reasonable doubt where overwhelming evidence of the quantity of drugs was admitted at trial and went unchallenged by the defendant at trial and in the presentence report.) Various witnesses testified without contradiction that the drugs the cooperating witness purchased from Hollis were crack. Hollis did not dispute at trial, in his objections to the Presentence Report (PSR), or at sentencing the fact that what

he distributed was crack. The district judge found that "there is absolutely no doubt whatever, based on the evidence presented in this case, that the substance that is the subject of this case was . . . crack cocaine." We agree and conclude that the constitutional *Apprendi* error was harmless beyond a reasonable doubt. *See id.*

### *B. Prior Felony Drug Conviction*

Hollis further contends that the district judge committed *Apprendi* error when he applied the enhancement for a "prior conviction for a felony drug offense [which] has become final" without a jury finding. 21 U.S.C. § 841(b)(1)(A). Hollis makes two arguments. First, he argues that the decision in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), creating an exception to *Apprendi* for prior convictions, is flawed and will soon be overruled. We rejected this argument in *United States v. Quintana-Quintana*, 383 F.3d 1052, 1053 (9th Cir. 2004), and remain bound by *Almendarez-Torres*. Second, he argues that because application of the enhancement here turns on disputed facts, it falls outside the *Almendarez-Torres* exception. *See Shepard v. United States*, 544 U.S. 13 (2005).

**[10]** Hollis does not dispute the prior conviction but contends that the enhancement requires determination of facts about the prior offense, i.e., whether it was a "felony drug offense" and that it was final. To determine whether a prior conviction qualifies as a drug trafficking offense, we look only to the fact of conviction and the statutory definition of the prior offense. *United States v. Morales-Perez*, 467 F.3d 1219, 1221 (9th Cir. 2006). Here, the PSR, to which no exception was taken, reports that in 1994 Hollis was found guilty by a jury of "misconduct involving a controlled substance 3rd degree," sentenced to four and one-half years imprisonment, and released from custody in 1998. The Alaska statute makes it a class B felony to engage in "misconduct involving a controlled substance," and subjects a defendant to

the possibility of ten years' imprisonment. Alaska Stat. § 11.71.030; Alaska Stat. § 12.55.125; *see also* 21 U.S.C. § 802(44) (defining "felony drug offense" as any [drug] offense "punishable by imprisonment for more than one year under any law of the United States or of a State"). Thus, there can be no question that the previous conviction was for a felony drug offense and that it was final. This case does not involve the judicial fact-finding implicated in *Shepard*. 544 U.S. at 26 (holding that inquiry into the elements and facts underlying an offense is limited to the "charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant . . . or to some comparable judicial record"). The district court committed no error in finding that Hollis's prior conviction qualified as a felony drug offense.

AFFIRMED.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2007 Thomson/West.