IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,          )
                                   )
                        Plaintiff, )
                                   )
        vs.                        )
                                   )          No. 3:04-cr-0140-HRH
ARTHUR LEON HOLLIS,                )
                                   )
                        Defendant. )
_____    )


O R D E R

Motion to Vacate

These proceedings pursuant to 28 U.S.C. § 2255 were commenced by defendant's

pro se motion to vacate, set aside, or correct the judgment entered in this case.[1]  In due

course, counsel was appointed for defendant[2] and an amended motion was filed.[3]  The

amended motion set out seven grounds, all of which were claims of ineffective assistance

of counsel.  As proceedings on the amended motion went forward, the first, sixth, and a

portion of the fifth grounds for relief were waived or abandoned by counsel.[4]  A separate

---

[1]Docket No. 136.

[2]Lehman was appointed first.  She has been followed by six other attorneys during
the course of these § 2255 proceedings.

[3]Docket No. 166.

[4]Defendant's ineffective assistance claims based upon an alleged coercion to sign an
inculpatory statement, an alleged failure to call fact witnesses, and an alleged failure to
argue Evidence Rule 404(b) were waived or abandoned by defense counsel in a statement
of issues and supplemental briefing.  Docket No. 186 at 2-3.

or amended motion alleging prosecutorial misconduct was never filed; however, the parties and the U.S. magistrate judge have all made mention of prosecutorial misconduct.[5]

The remaining ineffective assistance of counsel issues are:

(1)    Ineffective assistance in failing to file a motion to suppress based upon an alleged illegal stop of defendant's white Dodge Dakota on December 9, 2004.

(2)    Ineffective assistance in failing to impeach plaintiff's cooperating source based upon his illegal drug activity while employed as an informant and an assault involving defendant.

(3)    Ineffective assistance in failing to challenge search warrants for 540 North Hoyt, Apt. 2, and 743 South Bragaw, Apt. 2.

(4)    Ineffective assistance based upon an alleged failure to properly impeach officers based upon alleged misrepresentations by officers in search warrant affidavits.

(5)    Ineffective assistance based upon an alleged failure to secure discovery from plaintiff and provide it to defendant for purposes of evaluating a plea of guilty by agreement.

The original and amended motion to vacate were referred to a United States magistrate judge who conducted extensive proceedings between January 26, 2009, when the original motion to vacate was filed, and July 10, 2013. During this time, three evidentiary hearings were conducted.[6] On July 10, 2013, the assigned magistrate judge entered his report and recommendation that the motion be denied;[7] and after considering

---

[5]Docket No. 395, passim; Docket No. 399 at 15-16; and Docket No. 400 at 40-41.

[6]For convenience, these evidentiary hearings are referred to either by their dates (November 19, 2010; January 9, 2012; and November 15, 2012) or as a first, second, or third evidentiary hearing, transcripts of which are found at Docket Nos. 238, 262, and 361.

[7]Docket No. 400.

objections which were essentially repetitive of earlier arguments, a final report and recommendation that the motion be denied was entered on September 9, 2013.[8]

After reviewing the magistrate judge's report and recommendation, the court personally reviewed the relevant portions of the file developed through the entry of judgment by this court and the affirmance of that judgment by the Ninth Circuit Court of Appeals, including the entire transcript of defendant's trial. The court has personally reviewed the entirety of the record of proceedings before the magistrate judge leading to his reports and recommendations, including the transcripts of the three evidentiary hearings, the exhibits admitted at these hearings and those ordered produced for defendant, and the transcripts of ex parte proceedings on motions of counsel to withdraw.

Because of the extended nature of the factual circumstances underlying defendant's indictment, the unusually long duration and complexity of the proceedings before the magistrate judge, and because the sequence of events is often important as to what happened both pretrial and during these proceedings, the court has assembled a chronological timeline. See attached appendix.

## I. Applicable Law

### A. Standard for Ineffective Assistance of Counsel[9]

Strickland v. Washington, 466 U.S. 668 (1984), establishes a two-prong test for determining whether counsel has rendered constitutionally ineffective assistance of counsel. The defendant must show that his attorney's representation was deficient and that this deficiency was prejudicial. Id. at 688, 694. The burden is upon the defendant to establish that his attorney's performance was "so deficient that it fell below 'an objective standard of reasonableness.'" Silva v. Woodford, 279 F.3d 825, 836 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 688). Strickland holds that judicial scrutiny of an attorney's

---

[8]Docket No. 405.

[9]The following text is adopted from the magistrate judge's Report and Recommendation entered July 10, 2013. Docket No. 400.

performance is highly deferential, and the court should make every effort to eliminate the distorting effect of hindsight and to evaluate the conduct from the attorney's perspective at the time. <u>Strickland</u>, 466 U.S. at 689. There is a strong presumption that an attorney's conduct falls within the wide range of reasonably professional assistance. <u>Id.</u> To establish prejudice, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." <u>Id.</u> at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." <u>Id.</u> Thus, the defendant must show more than an error that could conceivably have some effect on the outcome of the proceeding. Because the defendant must prove both deficient representation and resulting prejudice, the court may address either or both prongs in determining the motion to vacate premised on such grounds. The court need not determine whether an attorney's performance was deficient if such alleged deficiency could not have resulted in prejudice under the test.

B. <u>Standard for Brady Violation</u>

In a case factually similar to this case,[10] <u>Amado v. Gonzalez</u>, 734 F.3d 936, No. 11-56420 (9th Cir. Oct. 30, 2013), the Ninth Circuit Court of Appeals has recently reexamined the basics of the obligations placed upon prosecutors by <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

> The purpose of <u>Brady</u> is to ensure that "criminal trials are fair," <u>Brady</u>, 373 U.S. at 87, and "that a miscarriage of justice does not occur," <u>United States v. Bagley</u>, 473 U.S. 667, 675 (1985). Placing the burden on prosecutors to disclose information "illustrate[s] the special role played by the American prosecutor in the search for truth in criminal trials." <u>Strickler v. Greene</u>, 527 U.S. 263, 281 (1999).

<u>Amado</u>, No. 11-56420, slip op. at 21-22 .

---

[10]In <u>Amado</u>, the prosecution had withheld impeachment material about an important government witness.

In Amado, the circuit emphasizes the fact that the duty placed upon the prosecution "exists regardless of whether the defense made any request of the prosecution; the prosecution is required to provide material, favorable information even 'where the defendant does not make a Brady request.'" Id. at 22 (quoting Bagley, 473 U.S. at 680-82).

Addressing the fact that the prosecution is not just required to produce information favorable to a defendant, the circuit in Amado further observes:

> Favorable evidence includes that which impeaches a prosecution witness. In Giglio v. United States, 405 U.S. 150, 154 (1972), "the Government's case depended almost entirely" on one witness, yet the prosecution failed to inform the defense that the witness testified in exchange for a promise from the government that he would not be prosecuted. The Supreme Court held that the prosecution was required to inform the defense about its agreement with the witness because "evidence of any understanding or agreement as to a future prosecution would be relevant to [the witness's] credibility and the jury was entitled to know of it...."

Id. As the court in Amado as well as the Supreme Court has made clear, the prosecution's obligation extends to any material impeachment evidence, not just plea agreements. Id. at 22-23 (citing Bagley, 473 U.S. at 676).

Expanding upon the nature of the obligation which Brady places upon the prosecution, the Amado court observes that, "[t]he Supreme Court has not tempered the Brady obligation of prosecutors by imposing a due diligence standard on defense counsel." Id. at 23. However, the circuit court hastens to make it clear that defense counsel cannot assert a Brady violation based upon information of which the defense was aware but chose not to disclose in the course of trial. Id. On the other hand, a Brady violation may be based upon the prosecution's failure "'to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.'" Id. (quoting Kyles v. Whitley, 514 U.S. 419, 437 (1995)).

A Brady violation has three elements. Strickler, 527 U.S. at 281–82. First, there must be evidence that is favorable to the defense, either because it is exculpatory or impeaching.

Id.  Second, the plaintiff must have willfully or inadvertently failed to produce the evidence.  Id. at 282.  Third, the suppression must have prejudiced the defendant.  Id.

The prosecution's failure to produce a particular piece of evidence is not a Brady violation "if the government provides the defendant with the core Brady materials and the defendant fails to show that additional materials would have made a difference at the trial."  Amado, No. 11-56420, slip op. at 26-27.  To find prejudice under Brady and Giglio, it is not necessary to find that the jury would have come out differently.  Kyles, 514 U.S. at 434.  It suffices that there be "a reasonable probability of a different result" as to either guilt or penalty.  Id.  Prejudice exists "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial'."  Id. (quoting Bagley, 473 U.S. at 678).

C. Standard for Franks Proceedings

Franks v. Delaware, 438 U.S. 154 (1978), sets out the standards for addressing challenges to search warrants allegedly based upon untruthful or misleading fact statements in search warrant affidavits.  To succeed on such a challenge, a defendant must demonstrate that the alleged falsity was necessary to support a finding of probable cause for issuance of a search warrant.  United States v. Craighead, 539 F.3d 1073, 1080 (9th Cir. 2008).  The defendant must make a substantial preliminary showing that the affiant knowingly and intentionally made a false statement or that he or she made a statement recklessly disregarding the truth of factual matters upon which the search warrant depended.  United States v. Flyer, 633 F.3d 911, 916 (9th Cir. 2011).  Franks proceedings are not a substitute for cross-examination.  A Franks proceeding will fail if, having set aside the challenged statements, there remains sufficient support for a finding of probable cause for a search.  Franks, 438 U.S. at 171-72.  In the latter event, it is not necessary for the court to conduct any hearing.  It necessarily follows that where no substantial preliminary showing can be made, a defendant cannot fault his attorney for failing to file a Franks motion.

II.

Statement of Facts and Pretrial Proceedings

Shelby Ward was convicted of a drug offense in November of 1994. After he was released from prison and on supervised release, Ward was implicated in further drug dealing and was jailed but released with the approval of Judge Fitzgerald on June 18, 2004, to assist plaintiff as a confidential source. On August 18, 2004, in a supervised or controlled buy, Ward (using government-provided money) purchased cocaine base from defendant.[11]

Ward and his motorcycle were searched prior to embarking on the controlled buy. Ward was permitted to take with him to the buy nothing but the government-provided money and his driver's license. The court finds that there is no evidence that Ward had cocaine base secreted on his person or on his motorcycle when he went to meet with defendant. While on his way to the original buy site, a Red Apple parking lot, Ward stopped briefly at the Northway Mall. While at the Red Apple parking lot, Ward was briefly contacted by two individuals, one of whom apparently sought to buy drugs. At defendant's request, the buy site was moved to a Shell gas station. The court finds that Ward did not obtain the drugs ultimately delivered to task force officers from anyone other than the defendant. The court further finds that Ward was under surveillance during the entire time he was traveling to-and-from (and was at) the original and changed buy sites. There is no evidence that someone other than defendant and Ward were in the vehicle at

---

[11]Ward's Confidential Source Agreement was for a term of one year. Jan. 9, 2012 Evidentiary Hearing, Exhibit AA, Bates No. 001-002. However, Judge Fitzgerald's authorization for Ward to act as a confidential source was for a period of 60 days and expired prior to August 18, 2004. Id. at Bates No. 006. The authorization was extended for an additional 60 days, but the authorization was not signed until August 23, 2004. Id. at Bates No. 007. Detective Kennedy was not aware that the initial authorization to used Ward as an informant was not extended until after August 18, 2004. Nov. 15, 2012 Evidentiary Hearing Tr. at 55, Docket No. 361. Such authorizations are granted for the protection of the confidential source who is on supervised release. The fact that the authorization for Ward to assist the plaintiff had expired on August 18, 2004, does not prejudice the defendant.

the Shell station. Upon returning to task force offices, the officers retrieved 9 ounces of cocaine base from Ward.

As is normal, Ward had been fitted with an audio transmitting device prior to proceeding to the buy location, and arrangements to video tape the anticipated transaction were made. During the transaction, defendant said very little which was recorded, and the video of the transaction, while showing a vehicle known to be used by defendant, does not depict the defendant. As a consequence of the poor quality of the audio and visual recordings of the transaction, Ward's testimony was especially important to plaintiff's case against defendant.

After the August 18, 2004, transaction, task force officers received an unconfirmed report that Ward was entering into unauthorized, unsupervised drug transactions for his own account.[12] On August 30, 2004, task force officers and assistant U.S. attorneys met to discuss the foregoing situation. A memorandum of this meeting was put in DEA files, but was not copied to the assistant U.S. attorneys involved in this case. Plaintiff concedes that this memorandum should have been produced as <u>Brady</u> material but was not.

Employing a confidential source other than Ward, task force officers arranged to make a drug purchase from Ward in September of 2004. Ward was prosecuted for that offense (selling one ounce of cocaine) as well as for the possession of 145.3 grams of cocaine base seized from Ward's residence pursuant to a search warrant obtained by Ward's probation officer and executed May 15, 2003. Ward pled guilty to a criminal complaint making the foregoing charges pursuant to a plea agreement that included Ward's commitment to be truthful and to continue assisting plaintiff. After defendant's trial at which Ward testified pursuant to his plea agreement, Ward was sentenced to a lengthy term of imprisonment.[13] Task force officers were aware of at least two other transactions

---

[12]Another CS had allegedly bought 22 grams of crack cocaine from Ward.

[13]Ward's guideline range for sentencing was 168 to 210 months. After the court
(continued...)

allegedly involving Ward, but deemed them not to be prosecutable for lack of corroboration.[14]

On December 9, 2004, task force officers arrested defendant, searched his vehicle from which several items of potential drug dealing were photographed and seized, and on December 10, 2004, defendant was arraigned on a criminal complaint charging him with the August 18, 2004, sale of cocaine base. Items seized from defendant's vehicle and the photographs were admitted without objection in the course of defendant's trial.[15]

On the day after defendant's arrest, Detective Kennedy obtained and then executed a search warrant for 540 North Hoyt, Apt. 2.[16] In his search warrant affidavit, Kennedy reports that on June 18, 2004, he started an investigation of defendant based upon information from a confidential source later identified as Ward. Kennedy had determined that Ward "was providing reliable information regarding the drug trafficking activities of others in Alaska."[17] Kennedy further averred that "law enforcement, however, learned after the completion of several investigations, including one described in this affidavit [namely, the August 18, 2004, transaction] that the CS [Ward] was dealing crack cocaine on his/her own without the knowledge of law enforcement."[18] The affidavit further represents

---

[13](...continued)
granted a 5K1.1 departure for substantial assistance, that range was reduced to 84 to 105 months. The court imposed a sentence of 90 months. Docket No. 28 in Case No. 3:-04-cr-116.

[14]One transaction involved the 22-gram purchase of crack cocaine from Ward that another confidential source reported to Kennedy after August 18, 2004. The other was a FedEx package delivered to Cheyenne Auto Parts which Ward was believed to have asked another person to pick up for him.

[15]Trial Tr. at 2-76 to 2-85, Docket No. 121.

[16]Nov. 19, 2010 Evidentiary Hearing, Exhibit B, Tab 11. Detective Kennedy obtained a second search warrant for 743 South Bragaw, Apt. 2, based upon the same affidavit. Id. at Tab 6.

[17]Id. at Tab 11, Bates No. 092.

[18]Id. at Bates No. 092-93.

that Ward was a convicted felon for drug dealing and was being prosecuted for his side dealing. The search of 540 North Hoyt, Apt. 2, resulted in the discovery and seizure of evidence of drug dealing. On appeal, the Ninth Circuit Court evaluated the Kennedy affidavit and determined that: "[t]he references to the cooperating witness [Ward] were limited to his role in setting up the drug transaction and played no part in the determination that probable cause existed that evidence of drug dealing would be found in the apartment." United States v. Hollis, 490 F.3d 1149, 1153 (9th Cir. 2007).

On December 15, 2004, defendant was indicted for the August 18, 2004, drug transaction: a charge of distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1). Defendant was arraigned and pled not guilty. On February 2, 2005, a superseding indictment was returned against defendant, repeating Count 1 and adding Counts 2 and 3, maintaining drug premises in violation of 21 U.S.C. § 856(a)(1).[19] Defendant was arraigned on the superseding indictment and pled not guilty.

Defendant was represented by three attorneys in connection with the August 18, 2004 charges. Sterling was appointed first. When Sterling was permitted to withdraw,[20] Wells was appointed. When Wells was permitted to withdraw,[21] Butler was appointed. Butler was appointed well before trial and represented defendant through the trial. A fourth attorney represented defendant at sentencing, and a fifth represented him on a direct appeal. Sterling and Wells found defendant a very difficult client.

Pretrial discovery from the plaintiff was superficially normal in this case.[22] However, Sterling was troubled by what he deemed to be inadequate disclosures from the plaintiff. These concerns, as well as defendant's personal concerns about discovery, seem

---

[19]Count 2 was based upon the search of 540 North Hoyt, Apt. 2. Count 3 was based upon the search of 743 South Bragaw, Apt. 2.

[20]Docket No. 28 (Sealed).

[21]Docket No. 70 (Sealed).

[22]Sterling assembled a notebook of discovery which he received.

to have been a predominate factor in the souring of the attorney-client relationship between defendant and attorneys Sterling and Wells. From time to time, defendant has contended that his attorneys were not providing him with discovery materials. The court finds, however, that each of Sterling, Wells, and Butler in turn did make available to defendant the discovery that was made available to them by plaintiff.[23] In due course prior to trial, Butler was provided with additional <u>Brady</u>, <u>Giglio</u>, and <u>Jencks</u> and materials (herein <u>Brady</u> material).[24]

Defendant went to trial on the superseding indictment on August 8, 2005. Ward was examined and cross-examined extensively by the prosecution and defense counsel Butler.[25] In response to Butler's cross-examination questions, Ward testified as to the details of the controlled buy of cocaine base from defendant, his (Ward's) long career as a drug dealer, his felony conviction for drug dealing, his drug dealing while on supervised release, his drug dealing for his own account while also working for plaintiff as a confidential source, and his lying to Detective Kennedy about drug dealing. Ward was also questioned about his plea and cooperation agreement with plaintiff by which Ward hoped for (but was not promised) a substantial sentence reduction on the new charges against him. Ward confessed to his willingness to lie to help himself.

Defendant was convicted on all three counts and was sentenced to 240 months on each of Counts 1, 2, and 3. A merits appeal was taken. Defendant's conviction and judgment were affirmed. 490 F.3d 1149 (9th Cir. 2007). Defendant's motion to vacate was filed January 26, 2009, which led to the formulation of the ineffective assistance of counsel issues set out above.

---

[23]The availability of discovery to defendant was a continuing problem during these § 2255 proceedings, in part because of restrictions on what may be left with a defendant after consultation between counsel and the defendant.

[24]Nov. 19, 2010 Evidentiary Hearing, Exhibit F.

[25]Trial Tr. at 2-218 to 3-152, Docket Nos. 121 and 127.

### III. Discussion

#### A. Issue 1 - Ineffective Assistance of Counsel:  Vehicle Search

Defendant contends that counsel (Sterling, Wells, and Butler) who represented him prior to trial failed to file a motion to suppress based upon an alleged illegal stop of defendant's white Dodge Dakota on December 9, 2004.

Defendant's premise for this argument – that he was illegally stopped and arrested on December 9, 2004 – is baseless.  Facts developed at the trial of this case demonstrate beyond any question the existence of probable cause for Detective Kennedy and others to stop and arrest defendant in connection with the August 18, 2004, controlled drug transaction between confidential source Ward and defendant.  Defendant's vehicle was searched as an incident to that arrest.  Items seized from defendant's vehicle (including a scale with cocaine residue) were admitted at trial.  Due to the fact that the seizure of items from defendant's vehicle took place three months after the drug distribution charged in Count 1, the scale and other items obtained from defendant's vehicle were of little evidentiary value as that charge against defendant.

The search of defendant's vehicle was not addressed in any of the three evidentiary hearings conducted in this case; thus no post-trial facts were developed which might cast doubt upon the search of defendant's vehicle.  Counsel for the parties by and large ignore this issue in their final briefs.[26]  The magistrate judge has not addressed this issue in his report and recommendation.

The court concludes that defendant has failed to demonstrate that attorneys Sterling, Wells, and Butler's representation was deficient because the search of defendant's vehicle was not challenged, nor has defendant demonstrated any prejudice.  Indeed, this issue appears to have been abandoned by defendant.

---

[26]Defense counsel mentions the search of defendant's vehicle in the factual statement in his final brief but makes no argument on this issue.

B. <u>Issue 2 - Ineffective Assistance of Counsel:  Impeachment of Ward</u>

Defendant contends that trial counsel (Butler) ineffectively assisted him when Butler failed to impeach plaintiff's confidential source (Ward) based upon an assault involving the defendant and Ward's illegal drug activity "while employed as an informant."[27]

The facts underlying the assault contention were never developed.  Neither  trial testimony nor testimony taken at the three evidentiary hearings developed any facts suggesting that trial counsel was aware of any sort of altercation involving defendant and Ward.  Neither trial testimony nor testimony taken at the evidentiary hearings developed a motive for Ward to assist  with the prosecution of defendant other than Ward's desire to minimize his sentence on drug charges pending against him.  The assault issue was not addressed by counsel in their closing briefs, nor was it addressed by the magistrate judge in his report and recommendation.

The contention that Butler's assistance of defendant was deficient because he failed to impeach Ward with respect to his double-dealing – engaging in a controlled buy of drugs from defendant and at the same time selling drugs for his own account – is meritless. Butler was plainly aware of Ward's double-dealing and cross-examined Ward on this specific subject.[28]  Butler got Ward to concede that he was buying and selling drugs from several sources while working for the government.[29]  Ward was "playing the government."[30]  Ward conceded that he would "send them [the law enforcement officers] in one direction [while he was] dealing in another."[31]  Butler asked, "[y]ou were a risk taker

---

[27]Docket No. 186 at 5.

[28]Trial Tr. at 3-59 to 3-67, Docket No. 127.

[29]<u>Id.</u> at 3-59.

[30]<u>Id.</u> at 3-64.

[31]<u>Id.</u> at 3-65.

in the sense that you were working with the government and buying and selling crack cocaine on the side as well, weren't you?"[32]  And Ward answered yes.[33]

Defendant has made no showing that Butler's representation of defendant was deficient because he (Butler) did not cross-examine Ward about an assault.  Defendant's contention that Ward was not impeached as to his double-dealing is contrary to the facts.

The court concludes that Butler's cross-examination of Ward was not deficient.

C. <u>Issue 3 - Ineffective Assistance of Counsel:  Search Warrant Affidavit</u>

Defendant contends that counsel (Sterling, Wells, and Butler) who represented him prior to and during trial failed to challenge the search warrants issued for 540 North Hoyt, Apt. 2, and  743 South Bragaw, Apt. 2.  Defendant's argument is that counsel should have raised a <u>Franks</u> issue – a contention that Detective Kennedy falsified or recklessly disregarded facts in his search warrant affidavit.

Search warrants for 540 North Hoyt, Apt. 2, and 743 South Bragaw, Apt. 2, were issued by a magistrate judge based upon the affidavit of Detective Kennedy executed December 9, 2004, the day defendant was arrested.  The search warrants were executed and evidence of drug dealing was obtained.  A motion to suppress[34] was filed by defendant's then-attorney, Sterling.  It was contended that there was insufficient probable cause for a search and that the court should not sanction plaintiff's use of an informant who was self-dealing while assisting the government.  Based upon a report and recommendation of the magistrate judge,[35] the motion was denied.[36]

---

[32]<u>Id.</u> at 3-69 to 3-70.

[33]<u>Id.</u> at 3-70.

[34]Docket No. 24.

[35]Docket No. 64.

[36]Docket No. 74.

It was contended early in these motion to vacate proceedings that Detective Kennedy's representation in his search warrant affidavit that a confidential source had provided "reliable" information was false because it turned out that Ward was double-dealing. There was no such falsity or misrepresentation in the search warrant affidavit.

In investigating drug dealing, one of the more useful and lawful procedures employed by law enforcement is the engagement of a drug dealer to assist in gathering evidence as to another drug dealer. There are obvious, inherent risks in such investigative procedures. Law enforcement is dealing with criminals – people whose trustworthiness may be subject to question. In his search warrant affidavit, Detective Kennedy did not falsify facts or mislead the magistrate judge. There is no inconsistency between stating that the confidential source has provided reliable information and, at the same time, advising that the confidential source has been double-dealing. In the context of a matter such as this case, reliability has to do with whether the information provided by an informant can be verified. The fact that a confidential source is double-dealing (which may or may not be verifiable) simply does not negate the value of information provided by the confidential source that could be verified. Detective Kennedy's search warrant affidavit, judging from what happened subsequently, was both candid and accurate.

As these proceedings went forward, defendant's search warrant affidavit challenge evolved and was based not upon Detective Kennedy's affidavit, but rather upon Kennedy's trial testimony. At trial, Detective Kennedy testified that he did not trust Ward. It is contended that Butler should have, during trial, sought a Franks hearing based upon that testimony.

The fact that Detective Kennedy did not trust Ward was not inconsistent with the representation that Ward had provided reliable (that is, corroborated) information. As regards Detective Kennedy's mistrust of Ward, that statement was of course not contained in the search warrant affidavit; but that omission does not make the affidavit false or

misleading.  The magistrate judge was specifically informed that Ward was a felony drug dealer and that he had continued to deal for his own account while purporting to assist plaintiff.  Thus, the magistrate judge was not misled as to Ward's character.

The court finds that trial counsel did not learn anything new about Ward which would have been significant for purposes of the magistrate judge's issuance of a search warrant.  Based upon its independent review of the transcript of the trial proceedings, the court finds that no evidence whatever was developed which would support a contention that Detective Kennedy intentionally or recklessly misled the magistrate judge with respect to issuance of the search warrants.  The court concludes that trial counsel was not deficient in his representation of defendant because no <u>Franks</u> motion was made during trial based upon information developed with respect to Ward.

There is a secondary basis for rejecting defendant's present challenge of search warrants issued pursuant to Detective Kennedy's affidavit.  The validity of the search warrants was raised by defendant on his direct appeal.[37]  The court of appeals ruled against defendant's challenge to the search warrants because the search warrant affidavit's "references to the cooperating witness [Ward] were limited to his role in setting up the drug transaction and played no part in the determination that probable cause existed [for the issuance of a search warrant]."  <u>Hollis</u>, 490 F.3d at 1153.  Defendant's present <u>Franks</u> issue, like the policy issue raised in the search warrant issue that was put before the circuit court, is rendered moot by the circuit court's holding that the validity of the search warrants in question did not depend upon Detective Kennedy's statements about Ward.  Accordingly, the court concludes that defendant has failed to demonstrate that counsel's representation was deficient as regards challenging the search warrants issued for the apartments frequented by defendant.

---

[37]Defendant conceded that he did not have standing to challenge the search of the South Bragaw apartment.  <u>Hollis</u>, 490 F.3d at 1153 n.2.

D. <u>Issue 4 - Ineffective Assistance of Counsel:  Impeachment of Kennedy</u>

Defendant's fourth contention is that trial counsel (Butler) provided ineffective assistance based upon a failure to properly impeach the task force officers based upon alleged misrepresentations by the officers in search warrant affidavits.  This contention is an extension of Issue 3 discussed above.  Nowhere in these proceedings has defendant identified any false statement, misrepresentation, or statement recklessly disregarding the truth of factual matters.  There were no such misrepresentations on which to impeach any task force officer.

The fact is that trial counsel did challenge Detective Kennedy with respect to his knowledge of Ward's side-dealing.  Counsel made a point of having Detective Kennedy repeat his direct testimony to the effect that he did not trust Ward.  However, the fact that police officers did not trust Ward does not in any fashion contradict what the magistrate judge was told in Detective Kennedy's search warrant affidavit.  The magistrate judge was told that Ward was engaging in side-dealing as discussed above; but that fact, as well as the officer's mistrust of Ward, is not in any fashion inconsistent with telling the magistrate judge that in the past Ward had provided reliable information – that is, information that the officers were able to corroborate or confirm.  The above-described examination of Detective Kennedy and other officers, as well as Butler's cross-examination of Ward, were all intended to impeach Ward.  Again, there was no basis for impeaching any of the task force officers.

Defendant has failed to demonstrate that trial counsel's representation was deficient in any respect regarding his cross-examination of the task force officers.

E. <u>Issue 5 - Ineffective Assistance of Counsel: Brady Material</u>

The issue which has attracted the most attention and to which the most time and effort was devoted is defendant's ineffective assistance of counsel claim based upon an alleged failure of defense counsel to secure and plaintiff's failure to provide discovery,

namely <u>Brady</u> material. Early in the proceedings, defendant's focus was the alleged failure of defense counsel to provide <u>defendant</u> with discovery materials which plaintiff produced. As proceedings on the motion to vacate went forward, defendant appears to conflate a contention that defense counsel failed to move for discovery with a further contention that plaintiff was guilty of prosecutorial misconduct for failure to provide the defense with <u>Brady</u> material, in particular <u>Giglio</u> material useful to impeach Ward. As discussed in the statement of facts above, Ward's testimony was important. In the instant case, Dewey, who substantially assisted defendant in his efforts to support his motion to vacate, endeavored with some success to demonstrate that the conviction of defendant in this case was largely dependent upon the testimony of confidential source Ward.

Stepping back from the conflation of ineffective assistance of counsel with prosecutorial misconduct, at the pretrial stage, counsel for defendant (especially Sterling) believed that plaintiff was holding back materials which should have been produced by plaintiff. Discovery materials were received by Sterling. He assembled a discovery notebook.[38] He pestered plaintiff for additional discovery material and, when he was replaced by Wells, Wells continued the efforts to obtain discovery from plaintiff. Prior to trial, plaintiff provided defense counsel[39] with <u>Jencks</u> material.[40] As a consequence of the three evidentiary hearings, a whole lot was learned about what the plaintiff did not produce with respect to Ward. There is no claim that plaintiff failed to produce materials which should have been produced with respect to defendant. The focus is upon the

---

[38]Nov. 19, 2010 Evidentiary Hearing, Exhibit B.

[39]The <u>Jencks</u> material was produced to Wells just as he was withdrawing. Wells passed this material on to Butler. Nov. 19, 2010 Evidentiary Hearing Tr. at 136, Docket No. 238.

[40]Nov. 19, 2010 Evidentiary Hearing, Exhibit F. The court believes that Sterling, Wells, and Butler were justifiably concerned about the slowness of plaintiff's production of materials which it was obligated to disclose. Once a case goes to indictment, the court expects the prosecution to "have its ducks in a row" – that is, to have its evidence gathered up and ready for immediate delivery through the Rule 16, Federal Rules of Criminal Procedure, discovery process. Too frequently that appears not to happen.

plaintiff's disclosures with respect to its confidential source, Ward.   In its final brief, plaintiff has conceded that it failed to produce the September 1, 2004,[41] memorandum of a meeting between assistant U.S. attorneys and task force officers at which Ward's double-dealing was discussed.  Plaintiff also comes very close to conceding that there were other reports having to do with Ward that should have been produced but were not.[42]  Plaintiff did produce and Butler used Ward's plea/cooperation agreement as to new charges then pending against Ward.[43] Along the way, it also became apparent that, contrary to defense argument, plaintiff had information (some of it no doubt documented) about Ward that it was not obligated to produce as Brady or Giglio material.  By way of example, the third evidentiary hearing was devoted primarily to defense counsel's inquiries into Ward's connection to a FedEx package which was delivered to Cheyenne Auto Parts.  The package contained illegal drugs.  Ward, who was then in jail, appears to have had something to do with efforts to pick up the package.  Task force officers were not able to make a case of the situation.  Thus, there was nothing to disclose.  Similarly, the task force had evidence of an uncontrolled sale of illegal drugs by Ward to another confidential source in August 2004, which task force officers learned about after the controlled transaction between defendant and Ward that led to this case.  A prosecution resulted from that transaction because it was clear that the confidential source had illegally possessed the drugs.  But there was not a prosecutable case against Ward because the transaction was uncontrolled and was known only to the two confidential sources.

There are three aspects to defendant's last ineffective of counsel claim:  (1) whether defense counsel failed to effectively represent defendant because counsel did not formally move for additional discovery; (2) whether defendant himself was provided with the

---

[41]Docket No. 399 at 4.

[42]Id. at 11.

[43]Nov. 19, 2010 Evidentiary Hearing, Exhibit F.

discovery materials which plaintiff did disclose; and (3) whether defense counsel failed to effectively represent defendant because counsel did not move for a mistrial or a new trial because of prosecutorial misconduct.

As to the first aspect of this final issue – the obligation to produce <u>Brady</u> material, and in particular to produce material within the control of the task force or the prosecution which would be useful in defending by way of impeachment of plaintiff's star (but tainted) witness, Ward – the obligation is upon plaintiff, and defense counsel need not move to obtain this obligatory discovery. <u>Amado</u>, No. 11-56420, slip op. at 21-22. We now know that to some degree plaintiff failed in its obligation to produce <u>Brady</u> material, but that does not change the analysis. The burden to produce this material was still upon plaintiff, not upon defense counsel to request it. Defense counsel sought <u>Brady</u> material from plaintiff informally. They did not have to file a formal motion. Defense counsel's pretrial discovery efforts did not fall below the objective standard of reasonableness. Their work was not deficient.

Turning to the second aspect of this issue, Sterling, Wells, and Butler went to considerable pains to share with the defendant the discovery materials produced by plaintiff. Defense counsel so testified, and there is no conflicting evidence – only unsubstantiated argument. Defendant's concern prior to trial was that he had insufficient information upon which to base a decision to accept or reject a plea agreement. Because the court finds that defense counsel did keep defendant informed of what they learned about the plaintiff's case against defendant (as well as known weaknesses with respect to Ward), defense counsel's conduct was not deficient. Indeed, it is clear that defense counsel believed, and advised defendant, that he would likely be convicted and that he should accept the plea agreement.

As to the third aspect of the <u>Brady</u> issue, defendant's argument is, as pointed out by plaintiff, circular. Defendant would have the court fault trial counsel (Butler) for failure to

move for a mistrial or for a new trial because of the alleged prosecutorial misconduct. But that conduct – the failure to produce <u>Brady</u> material as to Ward – was not known and was not developed until the post-trial evidentiary hearings that were conducted following the filing of defendant's motion to vacate. Defense counsel cannot be faulted for not seeking a mistrial or new trial based upon plaintiff's failure to disclose <u>Brady</u> material of which defense counsel had no knowledge. Trial counsel's representation of defendant was not deficient because a mistrial or new trial was not sought based upon plaintiff's failure to produce <u>Brady</u> material.

The court concludes that trial counsel's representation of defendant was not deficient. Defendant's attorneys' performance as to discovery and delivery of discovery material to defendant and defendant's trial attorney's performance with respect to post-trial motions was objectively reasonable.

As mentioned above, the concept of prosecutorial misconduct crept into the case as the motion to vacate went forward. No motion for relief because of prosecutorial misconduct was ever filed, and the case was not argued or briefed as a prosecutorial misconduct situation.

As set out in the applicable law section above, there are three elements to a prosecutorial misconduct claim. The third element is prejudice to the defendant. Prejudice is of course also the second element of an ineffective assistance of counsel claim under <u>Strickland</u>. In this case, defendant has not established prejudice for purposes of an ineffective assistance of counsel claim, and the same would be true if this matter had been brought as a prosecutorial misconduct claim.

The discovery lapses in question have to do with trial counsel's ability to impeach Ward. Butler had a wealth of impeachment information available to him, and he used it. Butler emphasized Detective Kennedy's testimony that he did not trust Ward. In cross-examining Ward, Butler took this government witness through the entire litany of his

wrongdoing: Ward is a convicted felony drug dealer; he has a long history of drug dealing; despite instructions not to do so, he was dealing while assisting plaintiff; he lied about what he was doing while attempting to assist the plaintiff; and he conceded that he would probably lie to better his situation. Ward was examined and the jury knew about benefits that he expected to receive from the government as a consequence of his cooperation.[44]

Had the September 1, 2004, memorandum discussing Ward's double-dealing been made available to the defense, it would have added nothing. Butler ably cross-examined Ward with respect to his double-dealing. There may have been other materials which prudence would have caused the plaintiff to produce as Brady material in this case; but all of the materials which were produced in the course of evidentiary hearings conducted in connection with this motion to vacate would have been duplicative of the kind of information that Butler did have and used in cross-examining Ward.

Butler had and employed the "core Brady material...." Amado, No. 11-56420, slip op. at 26. Defendant has not shown a reasonable probability of a different result had the materials withheld by plaintiff been available. Plaintiff's failure to produce additional impeachment materials has not undermined the court's confidence of the jury's verdict. Because a prosecutorial misconduct claim (were it made) would depend upon exactly the same factual underpinnings, there would be no prejudice in this case in the event of a prosecutorial misconduct claim.

IV. Conclusion

Defendant's motion to vacate is denied.

DATED at Anchorage, Alaska, this 2nd day of December, 2013.

/s/ H. Russel Holland<br>United States District Judge

---

[44]Trial Tr. at 3-47 to 3-48 and 3-110 to 3-111, Docket No. 127.

APPENDIX TO ORDER ON MOTION TO VACATE

| | |
|---|---|
| Nov. 16, 1994 | Shelby Ward was convicted and sentenced to a term of 118 months' imprisonment and 96 months' supervised release for drug offenses.[45] |
| Nov. 22, 2002 | Ward commences term of supervised release.[46] |
| Apr. 9 &10, 2003 | Ward sells drugs to Harrison, a CS, and to Balega, an undercover task force officer.[47] |
| May 14, 2003 | Drugs (145.3 grams of cocaine base) are found in Ward's residence upon execution of a search warrant. Ward is arrested.[48] |
| Sept. 4, 2003 | Ward has a friend pick up a FedEx package containing drugs at Cheyenne Auto Parts.[49] |
| Jan. 16, 2004 | Ward's supervised release is revoked for drug use violations, not for the 145.3 grams of cocaine base.[50] |
| Mar. 15, 2004 | Ward is again on supervised release.[51] |
| June 17, 2004 | Ward arrested for April drug distribution.[52] |
| June 18, 2004 | Kennedy starts investigation of defendant Hollis.[53] |
| June 18, 2004 | Judge Fitzgerald approves use of Ward as a confidential source, and Ward is released from jail.[54] |

---

[45]Nov. 19, 2010 Evidentiary Hearing, Exhibit F.

[46]Docket No. 281-4 at 3 (Sealed).

[47]Docket No. 281-4 at 1-2 (Sealed).

[48]Id. at 2.

[49]Nov. 15, 2012 Evidentiary Hearing Tr. at 18-22, Docket No. 361.

[50]Docket No. 281-4 at 2 (Sealed).

[51]Id. at 3.

[52]Nov. 19, 2010 Evidentiary Hearing, Exhibit F.

[53]Nov. 19, 2010 Evidentiary Hearing, Exhibit B, Tab 11.

[54]Jan. 9, 2012 Evidentiary Hearing, Exhibit AA, Bates No. 006.

| | |
|---|---|
| June 21, 2004 | April drug distribution charge against Ward is dismissed.[55] |
| June 25, 2004 | Ward signs Confidential Source Agreement.[56] |
| July 19, 2004 | Defendant rents 540 North Hoyt, Apt. 2.[57] |
| Aug. 18, 2004 | Ward purchases drugs from defendant in a "controlled" buy, which leads to the judgment in this case. |
| Aug. 23, 2004 | Judge Fitzgerald renews authorization for Ward to assist as a confidential source.[58] |
| Aug. 30, 2004 | Ward is reported to have sold 22 grams of cocaine base to another confidential source ("CS") in a non-controlled transaction.[59] |
| Aug. 30, 2004 | Assistant U.S. attorney and federal agents meet to discuss the fact that, after August 18, 2004, agents received a report from a CS that Ward has been dealing for his own account while working for the plaintiff.[60] |
| Sept. 1, 2004 | Memorandum of August 30, 2004, meeting is put in DEA file.[61] |
| Sept. 23, 2004 | Ward sells drugs to another CS in a controlled buy and is arrested.[62] |
| Oct. 19, 2004 | Ward is charged in a criminal information with the September 23, 2004, drug transaction (Count 2), and with possession of 145.3 grams of cocaine base based upon the May 14, 2003, search warrant seizure (Count 1).[63] |

---

[55]Jan. 9, 2012 Evidentiary Hearing, Exhibit AA, Bates No. 0006.

[56]Id. at Bates No. 001-2.

[57]Nov. 19, 2010 Evidentiary Hearing, Exhibit F.

[58]Jan. 9, 2012 Evidentiary Hearing, Exhibit AA, Bates No. 007.

[59]Id. at Bates No. 008.

[60]Id.

[61]Id.

[62]Docket No. 281-4 at 3 (Sealed).

[63]Id.

| | |
|---|---|
| Dec. 9, 2004 | Federal agents stop defendant while he is driving a 2001 white Dodge Dakota. Defendant is arrested, his vehicle searched, and items of evidence are seized. Defendant was arrested on the basis of the August 18, 2004, drug transaction.[64] |
| Dec. 9, 2004 | Detective Kennedy executes affidavit for search warrant for 540 North Hoyt, Apt. 2, and 743 South Bragaw, Apt. 2.[65] |
| Dec. 10, 2004 | Defendant is arraigned on a criminal complaint.[66] |
| Dec. 10, 2004 | Search warrant is issued for 540 North Hoyt, Apt. 2.[67] |
| Dec. 10, 2004 | 540 North Hoyt, Apt. 2, is searched pursuant to a search warrant.[68] |
| Dec. 13, 2004 | Attorney Sterling appears as counsel for defendant.[69] |
| Dec. 15, 2004 | Defendant is indicted for the August 18, 2004, drug transaction.[70] |
| Dec. 15, 2004 | Defendant is arraigned on the indictment.[71] |
| Dec. 20, 2004 | Plaintiff and Ward enter into a plea agreement, including a cooperation agreement.[72] |
| Dec. 21, 2004 | Ward pleads guilty to possession with intent to distribute over 50 grams of cocaine base.[73] |

---

[64]Nov. 19, 2010 Evidentiary Hearing, Exhibit B, Tab 7, Bates No. 068-69.

[65]Id. at Tabs 6 and 11.

[66]Docket No. 2.

[67]Nov. 19, 2010 Evidentiary Hearing, Exhibit B, Tab 11.

[68]Id. at Tab 3.

[69]Docket No. 6.

[70]Docket No. 1.

[71]Docket No. 6.

[72]Nov. 19, 2010 Evidentiary Hearing, Exhibit F.

[73]Docket No. 281-2 at 2 (Sealed).

| | |
|---|---|
| Dec. 29, 2004 | Beginning on this date[74] and continuing during Sterling's representation as well as representation by Wells and Butler, discovery materials produced by plaintiff are discussed with defendant. |
| Feb. 14, 2005 | Trial is first scheduled for this date;[75] however, trial is postponed numerous times because of various circumstances such as substitution of counsel. |
| Feb. 16, 2005 | A superseding indictment is returned against defendant, repeating Count 1, distribution of controlled substances, and adding Counts 2 and 3, maintaining drug premises in violation of 21 U.S.C. § 856(a)(1) as to both the North Hoyt apartment and South Bragaw apartment.[76] |
| Feb. 25, 2005 | Defense counsel moves to suppress the evidence seized during the search of the two apartments.[77] In due course, the magistrate judge recommends denial,[78] and the report and recommendation is adopted by Judge Singleton.[79] Defendant's arguments that the search warrants were invalid because Ward was dealing on the side, because of insufficient evidence to support a search for the items listed, and because of insufficient evidence of defendant's residence at either apartment were rejected. |
| Mar. 7, 2005 | Sterling is permitted to withdraw.[80] |
| Mar. 11, 2005 | Wells is substituted for Sterling.[81] |
| Apr. 29, 2005 | Plaintiff promised to produce Jencks, Brady, and Giglio materials by this date.[82] |

---

[74]Docket No. 12.

[75]Docket No. 9.

[76]Docket No. 18.

[77]Docket No. 24.

[78]Docket No. 51.

[79]Docket No. 74.

[80]Docket No. 28.

[81]Docket No. 30.

[82]Nov. 19, 2010 Evidentiary Hearing, Exhibit D.

| | |
|---|---|
| May 5, 2005 | Wells is permitted to withdraw, and Judge Sedwick recuses.[83] |
| May 11, 2005 | Butler appears as defense counsel.[84] |
| June 9, 2005 | Case is reassigned to Judge Holland.[85] |
| Aug. 8, 2005 | Jury trial commenced and, on August 11, 2005, defendant is convicted on all three counts.[86] |
| Aug. 23, 2005 | Ward is sentenced for sale of 145.3 grams of cocaine base to serve 90 months, a substantial sentence reduction per his cooperation agreement.[87] |
| Nov. 10, 2005 | Defendant is sentenced to 240 months on each of Counts 1, 2, and 3; judgment entered.[88] |
| Nov. 22, 2005 | Defendant's notice of appeal is filed.[89] |
| May 7, 2007 | District court's judgment is affirmed by court of appeals.[90] |
| June 20, 2007 | Amended opinion of Ninth Circuit is issued, 490 F.3d 1149 (9th Cir. 2007).[91] |
| Jan. 26, 2009 | Defendant's pro se motion to vacate is filed.[92] |
| March 3, 2009 | Defendant's request for appointment of counsel is granted.[93] |

---

[83]Docket No. 70.

[84]Docket No. 75.

[85]Docket No. 78.

[86]Docket Nos. 96, 97, and 98.

[87]Docket No. 281-3 at 3 (Sealed).

[88]Docket No. 109.

[89]Docket No. 109A.

[90]Docket No. 133.

[91]Docket No. 133-2.

[92]Docket No. 136.

[93]Docket No. 145.

| March 5, 2009 | Lehman files an appearance.[94] |
| April 23, 2009 | Lehman is permitted to withdraw.[95] |
| April 27, 2009 | Libbey is appointed as defendant's counsel.[96] |
| Oct. 16, 2009 | Amended motion to vacate is filed.[97] |
| Aug. 2, 2010 | Libbey is permitted to withdraw.[98] |
| Aug. 4, 2010 | Dewey is appointed as defendant's counsel.[99] |
| Nov. 19, 2010 | First evidentiary hearing on motion to vacate is held. [100] |
| Apr. 19, 2011 | Defendant's request for a further evidentiary hearing is denied.[101] |
| Aug. 5, 2011 | Defendant's request for a further evidentiary hearing is granted.[102] |
| Jan. 9, 2012 | Second evidentiary hearing on motion to vacate is held.[103] |
| June 28, 2012 | Dewey is permitted to withdraw.[104] |
| July 2, 2012 | Ahearn files an appearance.[105] |

---

[94]Docket No. 146.

[95]Docket No. 157.

[96]Docket No. 158.

[97]Docket No. 166.

[98]Docket No. 218.

[99]Docket No. 219.

[100]Transcript at Docket No. 238; Exhibit List at Docket No. 233.

[101]Docket No. 240.

[102]Docket No. 249.

[103]Transcript at Docket No. 262; Exhibit AA is a receipt for copies of discovery made available to attorney Dewey.

[104]Docket No. 307.

[105]Docket No. 309.

| | |
|---|---|
| Aug. 6, 2012 | Ahearn is permitted to withdraw.[106] |
| Aug. 21, 2012 | Nesbett files an appearance.[107] |
| Sept. 19, 2012 | Nesbett is appointed stand-by counsel; defendant is proceeding pro se.[108] |
| Nov. 15, 2012 | Third evidentiary hearing on motion to vacate is held.[109] |
| March 1, 2013 | Robinson's motion to appear pro hac vice is granted.[110] |
| April 15, 2013 | Defendant's final brief on motion to vacate is filed.[111] |
| May 8, 2013 | Nesbett's motion to withdraw is granted.[112] |
| May 13, 2013 | Plaintiff's final brief in opposition is filed.[113] |
| July 10, 2013 | Magistrate judge issues initial report and recommendation.[114] |
| Sept. 9, 2013 | Magistrate judge issues final report and recommendation.[115] |

---

[106]Docket No. 322.

[107]Docket No. 325.

[108]Docket No. 334.

[109]Transcript at Docket No. 361; Exhibit List at Docket No. 359.

[110]Docket No. 390.

[111]Docket No. 395.

[112]Docket No. 398.

[113]Docket No. 399.

[114]Docket No. 400.

[115]Docket No. 405.